UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                    Case No. 20-CR-196-5

JONATHAN HENLEY,

        Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

Jonathan Henley ("the Defendant") applied for a fraudulent $212,500 Paycheck Protection Program ("PPP") for his company, Premier Logistic Solutions. For his conduct, the Defendant faces a guideline sentencing range of 21-27 months' incarceration as recommended by the Plea Agreement (Dkt. 42) and the Presentence Investigation Report (Dkt. 158.) and a statutory maximum sentence of 30 years' incarceration. In light of the factors in 18 U.S.C. § 3553 and for the reasons set for below, the United States respectfully requests that this Court impose a term of imprisonment at the bottom of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range plus two years of supervised release.

**I.    OVERVIEW OF *UNITED STATES V. THOMAS SMITH, ET AL*.**

The Defendant was one of the related defendants in the government's prosecution in *United States v. Thomas Smith, et al.*, which involved charges of bank fraud conspiracy and money laundering against five individuals. All of the charged conduct

took place in the spring and summer of 2020. As described more fully in the Indictment and plea agreements associated with each of the defendants, the defendants obtained fraudulent PPP loans from a bank using false and fraudulent application materials. *See* Dkt. Nos 1, 5, 38, 42, 53, 73. In addition to the five defendants (including the Defendant) charged in the Indictment, three other defendants, were charged by Information for their part of the scheme. *See United States v. Tarone Woods*, 20 CR 197; *United States v. Deon Petty*, 20 CR 199; *United States v. Marvin Fitzgerald*, 20 CR 202. In total, the scheme sought over $1 million in government funds for employees (and sometimes businesses) that did not exist. Proceeds of the fraud were shared among co-defendants. Some of the defendants also coordinated the false statements they planned to provide law enforcement, if approached, to try to conceal their crimes. To date, each of the other defendants involved in the scheme have been sentenced.[1]

## II.     OVERVIEW OF *UNITED STATES V. JONATHAN HENLEY*

A more detailed recitation of the facts relating to the scheme are detailed in the Defendant's plea agreement (Dkt No. 42), the plea agreements of the related defendants in the case, the PSR, and the government's submission regarding restitution. (Dkt. No. 87.)

In May 2020, Samuel Davis introduced the Defendant to Thomas Smith in order to get a PPP loan for the Defendant's company, Premier Logistic Solutions, LLC ("Premier Logistic"). Premier Logistic was formerly a trucking company that had been defunct since June 2019. Most importantly, Premier Logistic did not have any

---

[1] Henley's sentencing was postponed after he was appointed new counsel. *See* Dkt. Nos. 68, 71.

2

Case 2:20-cr-00196-BHL    Filed 09/15/21    Page 2 of 11    Document 160

employees or payroll, and thus was not eligible for a PPP loan. Thomas Smith directed the Defendant to open a business checking account at Financial Institution 1 in order to apply for the loan. Thomas Smith prepared the loan paperwork, which included false assertions that Premier Logistic had employees and payroll. Thomas Smith also prepared fake tax returns to submit in support of the false statements. The Defendant signed the loan application and delivered it to Financial Institution 1.

Originally, Thomas Smith and the Defendant agreed to apply for a $100,000 loan, and the Defendant agreed to pay Thomas Smith $20,000 of the fraudulent loan proceeds. When the Defendant arrived to pick up the loan paperwork from Thomas Smith, he discovered that the loan application sought $212,500. The Defendant agreed to pay Thomas Smith $112,500 of the loan proceeds. Financial Institution 1 ultimately declined the fraudulent loan application for Premier Logistic.

In June 2020, after the Financial Institution 1 loan application was denied, the Defendant was introduced to another individual who offered to help the Defendant get a PPP loan from Financial Institution 2. The Defendant provided this individual with business and personal information. The individual prepared fraudulent loan paperwork and created false tax forms to support the false numbers. The Defendant and this individual submitted a fraudulent loan application seeking $17,500 to Financial Institution 2. Financial Institution 2 also declined the loan application.

In addition to the two PPP loans the Defendant submitted, the Defendant was also involved in the submission of two fraudulent Economic Injury Disaster Relief Loan applications in April and June of 2020.

### III. PROCEDURAL HISTORY

A more detailed recitation of the procedural history of this case and the related cases can be found in the Government's Position on Restitution. (Dkt. 87.) To summarize, on October 20, 2020, a grand jury returned an indictment charging the Defendant, Thomas Smith, Stephen Smith, Samuel Davis, and Robert Hamilton for participating in a bank fraud scheme between April 2020 and July 2020, in violation of Title 18, United States Code, Section 1344, and for engaging in money laundering, in violation of Title 18, United States Code, Section 1957. (Dkt. 1.)

The Defendant pled guilty to Count Six of the Indictment (Bank Fraud, in violation of Title 18, United States Code, Section 1344) pursuant to a written plea agreement on January 6, 2021. (Dkt. 42, 50.) Sentencing is scheduled for September 23, 2021.

### IV. SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office's calculation of the Guidelines in this case. The Final Presentence Investigation Report, filed on September 15, 2021, determined that the total offense level was 16 and that the Defendant's criminal history category was I, which corresponds to an advisory Guidelines range of 21 to 27 months' imprisonment. (PSR at ¶ 86.) The Probation Officer found that the Defendant was subject to a Base Offense Level of seven under U.S.S.G. § 2B1.1(a)(1). (*Id.* at ¶ 42.) The Defendant then received a 10-level enhancement for a loss exceeding $150,000 but less than $250,000 under U.S.S.G. § 2B1.1(b)(1)(F). (*Id.* at ¶ 43.) The Defendant received a

two-level enhancement because the offense involved sophisticated means under U.S.S.G. §2B1.1(b)(10)(C). (*Id.* at ¶ 44.)

The parties and the Probation Office agree that the Defendant is entitled to a two-level reduction for acceptance of responsibility. The Defendant has assisted authorities in the investigation and prosecution of his own misconduct by pleading guilty prior to indictment, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. Therefore, the United States moves the Court, under Section 3E1.1(b), to grant the Defendant an additional one-level reduction in the offense level for acceptance of responsibility if the Defendant receives the two-level reduction for acceptance of responsibility.

With a Total Offense Level as Level 16, and a Criminal History Category of I, the Sentencing Guidelines recommend a sentence between 21- and 27-months' imprisonment. The United States agrees with the PSR's Guidelines' Calculations and has no corrections to the PSR.

## V. CONSIDERATION OF FACTORS UNDER SECTION 3553(A)

### A. Nature and Circumstances of the Offense

The Defendant participated in serious criminal conduct and deserves to be punished for his choices. In 2020, as the COVID-19 pandemic spread across the country causing death and economic distress, the government created PPP loans to help small businesses whose livelihoods were jeopardized. The Defendant, who did not have a business that was eligible for the PPP, took advantage of the program by submitting a

5

false application claiming to have employees and payroll that did not exist. His application was supported by false tax forms.

Furthermore, after being denied by Financial Institution 1, the Defendant continually attempted to obtain fraudulent loans from the PPP and the EIDL. The Defendant went to another bank to obtain a fraudulent PPP loan for Premier Logistic, again supported by false tax returns. And he was involved in the submission of two fraudulent EIDL applications. The Defendant's actions show that he was determined to obtain money from pandemic relief programs, despite the fact that he knew that he was not eligible.

Though the Defendant's conduct was serious, there are some mitigating factors to consider. The Defendant's role in the scheme was significantly less than the ringleaders of the scheme. The Defendant was introduced to the scheme by Samuel Davis. Furthermore, though he willingly passed on the falsified documents, the Defendant did not create any of the loan paperwork or fake tax documents. Finally, the Defendant did not make any false statements to the bank in order to conceal the scheme, though that is likely because he was not given the opportunity.

B.     **History and Characteristics of the Defendant**

The Defendant is a 52-year-old man who is in good health. (PSR ¶ 62, 72.) The Defendant grew up in Chicago and continues to reside there. (*Id.* ¶ 66.) The Defendant's parents died when he was 14 years old, and he went to live with his godparents. (*Id.* ¶ 65.) In spite of this tragedy, the Defendant reported his household as "happy, warm, and loving." (*Id.* ¶ 67.) The Defendant has been married since 2000 and

6

has one child, who he reports being close to. (*Id.* ¶ 69.) The Defendant has been an independent car salesman since 2013. (*Id.* ¶ 78.) He founded Premier Logistic, a freight transportation company, in 2011, but the business has been shuttered since 2017. (*Id.* ¶ 77.) In 2021, the Defendant has attempted to restart the business. (*Id.*) The Defendant has no criminal history. (*Id.* ¶ 57.)

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for trial.

> C. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

The government believes a that a sentence at the bottom of the Guidelines is appropriate for both specific and general deterrence. The sentence in this case should send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Indeed, as the pandemic continues to impact small businesses, the PPP loan program remains ongoing. Actors like the Defendant who seek to defraud these programs make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence should serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

A term of imprisonment may also be necessary to specifically deter the Defendant from engaging in criminal conduct in the future. After he was involved in the fraudulent PPP loan to Financial Institution 1, he sought out a second PPP loan from Financial Institution 2 in June 2020. Furthermore, throughout the course of the PPP

7

scheme, he also sought two fraudulent loans through the SBA EIDL program. The fact that the Defendant continued to seek out "free money" without asking questions after the fraudulent PPP loan had been questioned by Financial Institution 1 suggests that the Defendant was not deterred upon being discovered. Despite this, the Defendant has no criminal record and his behavior in the spring and summer of 2020 does appear to be an aberration.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and those in this case. Around the country, courts have imposed meaningful jail sentences in similar cases. *See, e.g.*, *United States v. David Hines*, 21-CR-20011, S.D.FL. (imposing 78-month sentence on an individual who fraudulently applied for multiple PPP loans with a loss of $3.9 million and also assisted others in submitting fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-CR-193, E.D.AR (imposing 41-month sentence on an individual who fraudulently applied for two PPP loans with a loss of $1.9 million); *United States v. Tarik Jaafar*, 20-CR-185, E.D.V.A. (imposing 12-month sentence on an individual who fraudulently applied for 18 PPP loans with a loss of $1.4 million); *United States v. Zhang*, 20-CR-169, W.D.W.A. (imposing 60 day sentence on an individual who fraudulently applied for multiple COVID-19 relief program loans, including four PPP loans with a loss of over $900,000).

While the other cases around the country provide some point of reference for the appropriate sentence, the more appropriate comparison is with the other defendants

8

charged as part of this scheme. When comparing the Defendant to others in the scheme, the government submits that the Defendant was significantly less culpable than Thomas Smith or Stephen Smith.[2] This should be reflected in his sentence. The Defendant was recruited into the scheme and did not fill out any of the applications or create false documents like Thomas Smith. Finally, unlike Thomas Smith, the Defendant was not involved in the creation or direction of the scheme.

Rather, the Defendant is more akin to the other defendants in this scheme who were recruited to the scheme by individuals they looked up to and respected. A sentence similar to the other defendants, such as Samuel Davis, Robert Hamilton, or Tarone Woods is more appropriate.[3]

## VI. RESTITUTION & FORFEITURE

The government incorporates its Position on Restitution for Sentencing, filed on April 13, 2021 at Docket No. 87. For the reasons explained in that submission, the government is not seeking restitution or forfeiture from the Defendant.

\*         \*         \*

For the reasons stated above, the United States respectfully requests that the Court impose a term of imprisonment at the bottom end of the Guidelines and a two-year term of supervised release. The United States submits that this sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

---

[2] Thomas Smith received a sentence of 57 months' confinement; Stephen Smith received a sentence of 36 months' confinement.

[3] Davis, Hamilton, and Woods were each sentenced to a term of 6 months' confinement.

9

Respectfully Submitted,

JOSPEH BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

*s/Laura Connelly*_____
LAURA CONNELLY
LESLIE S. GARTHWAITE
Trial Attorneys
Fraud Section
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Phone: 202-307-1423
laura.connelly@usdoj.gov

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

                                        */s Laura Connelly*_____
                                        LAURA CONNELLY
                                        LESLIE S. GARTHWAITE
                                        Trial Attorneys
                                        Fraud Section
                                        U.S. Department of Justice