# FEDERAL DEFENDER SERVICES
# OF WISCONSIN, INC.
LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Ettinger
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom Phillip
Joshua D. Uller
Alex Vlisides
Kelly A. Welsh

517 East Wisconsin
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900

Facsimile 414-221-9901

September 21, 2021

Honorable Judge Brett H. Ludwig
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE:  *United States v. Jonathan Henley*
     Case No. 20-CR-196-5

Dear Judge Ludwig:

At 52 years old, and after a lifetime of making good choices despite hardship and challenges, this Court will sentence Jonathan Henley for his first offense. Henley has expressed sincere regret, remorse, and embarrassment over his choices. He has agonized over the possibility that he may be separated from his family. And because he has been self-employed, he is also concerned about the future financial consequences to his family. He recognizes how much he disappointed his wife, and dreads the day he will have to talk to his son about his offense.

Henley's offense is serious and certainly had the potential to result in considerable losses to the American taxpayer. Yet for him it is clearly an anomaly, and for many reasons, he presents a very low risk to reoffend. Henley is not violent, or dangerous. He has no prior contacts with law enforcement. And he has demonstrated that he can be effectively monitored—and punished—in the community.

The government suggests that a sentence similar to Samuel Davis, Robert Hamilton, or Tarone Woods—who were each sentenced to six months imprisonment—would be appropriate. (Docket 160, at 9). Henley agrees that his offense does not require a sentence beyond six months. But for the reasons set forth in this memo, in the presentence report, and those provided at sentencing, Henley will respectfully recommend that the Court sentence him to time-served, followed by 6 months of home confinement as a condition of supervised release. Henley submits that this sentence is sufficient but not greater than necessary to achieve the goals of sentencing.

*Background*

Growing up, Mr. Henley enjoyed the guidance, support, and love of his mother and father. His mother worked in a hospital as a nutritionist, but after Henley and his siblings were born, she left the workforce to focus on the kids. "My mother was phenomenal," Henley said. He recalled his mother helping him get to school then being home to greet him after school. She cooked breakfast and dinner for the family, and was actively involved in school related activities.

The family survived on a modest income and lived in a housing project, but Henley said he did not know they were "poor" until he was older. This was because Henley always had food on the table, clothes on his back, and the things he needed to succeed in school. Beyond materialistic things, Henley notes that he had stability, structure, and emotional support from his parents. Indeed, his parents shielded him from crime and surrounding violence within their housing project they lived. As an adult, Henley says he looks back and realizes that when he had his parents he "had everything."

Henley's parents raised him, his sister Christmas, and his brother William with a strong faith and within the church. Henley fondly recalled attending Tuesday prayer, Wednesday bible study, and Sunday church as a family. His faith, he said, was the only part of his life that remained consistent through challenges and grief.

When Henley was fourteen years old, his dad died of a heart attack. His death devastated the family and turned their lives upside down. The family was still mourning when, six months later, his mother also passed away from heart related issues. Mr. Henley was inconsolable. It remains the most traumatic experience Henley has ever endured.

After his parent's death, Henley's life completely changed. No one was able to take all three kids, so the family split them up. His sister went to live with an aunt, his brother went to live with an older half-brother, and Henley went to live with his godparents. Coping with the death of his parents in the same year, his separation from his siblings, and moving to a new home was a lot for fourteen-year-old Henley. He didn't come out of that unscathed, but it also didn't change the person his parents had raised him to be.

Henley went on to finish High School and even attended some college. Until this offense, he lived a calm and law-abiding life. He met his wife in the 1990s, married her in 2000, and the two had a son soon after. Henley maintained employment, took care of his family, and was an active member of his community, volunteering as a baseball coach to children between the ages of seven and twelve. He worked hard to be a good role model for his son, and is very proud of the fact that his son is now in college.

Several years ago, Henley started a freight transportation company. The business struggled at times, forcing Henley to dissolve the business in a few instances. Some of the struggles were the product of Henley's management and bad hiring decisions. Other struggles, like mechanical problems, were out of his control. But all of those contributed to the struggles of his business. And it was the efforts to reopen this company led Henley to the poor choices he made in this case.

*Offense*

While the Court is well aware of the facts of this case, it is worth highlighting a few considerations for sentencing purposes.

However misguided, Henley attempted to obtain a loan to re-open his company in order to provide for his family. Unlike Thomas Smith, Henley was not financially well off. Greed was not Henley's motive, but rather, an ill-advised effort to get his business back on track and take care of his family. His son was going off to college and Henley hoped that his company would become lucrative enough to meet his son's and family's needs. He told himself that he would pay this loan back.

Though he initially denied details of his offense to law enforcement, he acknowledged from the beginning that he was aware that his company was not operational and that he did not have employees. Feeling remorse even then, Henley wanted to know as little as possible throughout the process. For example, he did not fill out the application, but he signed it; he did not forge any documents to procure the loan, but he submitted them. He just followed Thomas Smith's instructions.

His conduct did not go as far as some of his co-defendants. He did not recruit others to do the same; he did not make plans with co-defendants to lie to banks or obstruct the investigation; he did not try to cover up his offense. And, ultimately, unlike his codefendants, he was also unsuccessful in procuring a loan; he was denied on three occasions, and got a $4,000 advance from another. The amount lost in this conspiracy greatly exceeds Henley's personal gain.

After he was charged, Henley took responsibility for his actions well before he pleaded guilty. He came clean about his offense and even about conduct that the government was unaware took place. And unsurprisingly, he has followed his conditions of pretrial release without fail.

*Sentencing considerations and Recommendation*

Prior to this offense, Henley lived a law-abiding life. He finished high school, attended college, and he has a strong employment history. He is a devoted husband, father, and friend who has been a positive contributing member to his community. All this despite the traumatic experience of losing both of his parents at a young age.

This prosecution has been an eye-opening experience for Henley. He regrets his decisions, and the "what if's" and "I should have's" haunt him daily. He has been afraid for his future and the future of his family, and is ashamed that his choices have compromised their stability. He has been afraid of going to prison and being away from his family. He is embarrassed of his legal troubles and that at this stage of his life, he finds himself a felon. He has expressed to counsel on numerous occasions how much he wishes he could take it all back.

Henley's offense is serious, but his role is significantly less than the ringleaders of this case and also limited in ways that his co-defendants' cases are not. As noted by the government, Henley followed Thomas Smith's directions during the course of this offense. (Docket 160 at 3). He did not prepare the loan paperwork. He did not create fake tax returns. He did not recruit others. He did not make false statements to the bank to cover up his offense. And with the sole exception of his initial denial, Henley also did not lie to law enforcement. Moreover, the loss amount in this case greatly exceeds Henley's personal gain. The 10-level enhancement in this case applies based on intended loss, not actual loss. If the guidelines were based on actual loss, Henley's offense level would be 7, resulting in a 0-6 month recommended imprisonment range. That range appropriately reflects Mr. Henley's culpability.

Finally, and importantly, Henley is not violent or dangerous. He has no prior criminal record, no convictions, and no arrests. Not a single contact with law enforcement, traffic or otherwise. This bodes well for what the Court could expect from him on community supervision. According to research by the Federal Sentencing Commission, Henley falls in the "most empirically identifiable group of guideline offenders who are the least likely to reoffend" because he has no recorded contact with the criminal justice system prior to the instant offense.[1]

Henley's background together with the circumstances of the offense demonstrate that this prosecution alone has made a significant impact in Henley's life. He and his wife have been very worried about Henley's future and their mental and physical health have taken a toll. Henley is now a felon and, in addition to the punishment this Court imposes,

---

[1] United States Sentencing Commission, *Recidivism and the "First Offender,"* at 16 (May 2004), available at https://www.ussc.gov/research/research-publications/recidivism-and-first-offender

he will suffer the collateral consequences that go along with that status for the rest of his life: a significant punishment to Henley on its own.

For these reasons, and those that will be further argued at sentencing, Henley will respectfully recommend that the Court impose a sentence of time-served, followed by 6 months of home confinement as a condition of release. Henley submits that under the totality of the circumstances, this sentence is sufficient but not greater than necessary to achieve the goals of sentencing.

Sincerely,

*/s/ Gabriela A. Leija*