UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

JONATHAN E HENLEY,

        Defendant.

Case No. 20-cr-0196-bhl-5

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

### INTRODUCTION

    The Government indicted Defendant Jonathan E. Henley nearly two years ago, charging him and four co-defendants with participating in a scheme to submit fraudulent applications for loans under the federal Paycheck Protection Program. (ECF No. 1.) Henley cooperated with the Government, and, less than three months after the indictment, the Court accepted his guilty plea to one count of bank fraud under 18 U.S.C. §1344. (ECF No. 50.) Through no fault of his own, Henley's sentencing was delayed for another eight months. (ECF No. 165.) At the September 23, 2021 sentencing hearing, the Court exercised substantial leniency and, even though the Sentencing Guidelines called for a sentence of 21 to 27 months incarceration plus two to five years of supervised release, ordered Henley incarcerated for only six months to be followed by two years of supervised release. (ECF No. 167.) The Court also waived any fine (although the Guidelines recommended one for at least $10,000). (*Id.*) Henley was ordered to surrender to the Bureau of Prisons (BOP) as notified by Pretrial Services. (*Id.*)

    Almost a year has passed since sentencing, but Henley has yet to serve any portion of his sentence. On October 28, 2021, Henley filed the first of seven motions to extend his report date. (ECF No. 172.) This first request was premised on his need to train an employee to handle his business while he was in custody. (*Id.*) The Government did not oppose the brief extension, and the Court granted it the next day. (ECF No. 173). A few weeks later, Henley requested a second unopposed extension, this time seeking an additional month to allow him to attend medical

appointments to address a recent hypertension diagnosis. (ECF No. 174.) This request was also granted. (ECF No. 175.) These two short extensions spawned a series of four more requests, all allegedly necessary to allow Henley to complete medical appointments related to his hypertension and issues concerning his heart. (ECF Nos. 182, 185, 189, & 191.) Given the lack of opposition from the Government and the Court's desire to allow Henley to get his medical affairs in order, the Court acceded to these requests as well. (ECF Nos. 183, 186, 190, 197.) But, prior to granting the final request, the Court addressed counsel at a telephonic hearing and cautioned that the delays needed to come to an end and Henley needed to complete his sentence. (ECF Nos. 196, 197.) The Court emphasized that any further extension would risk undermining the very purposes of Henley's criminal sentencing. (*Id.*) Nevertheless, to allow Henley to complete scheduled medical appointments, the Court granted him one final extension of his report date, until August 19, 2022. (*Id.*)

On August 9, 2022, ten days before he was finally to report to the BOP, Henley filed a sealed motion for compassionate release. (ECF No. 199.) Citing medical records, Henley argues that his medical needs, including treatment for ongoing heart conditions, necessitate a change to his sentence and urges the Court to use its "compassionate release" power under 18 U.S.C. §3582(c)(1)(A)(i) to allow him to serve six months on home confinement rather than in prison. (*Id.*) On August 11, 2022, the Government filed a written opposition to Henley's request. (ECF No. 201.) The Government noted that it does not oppose referring him to a BOP medical facility to serve his sentence. (*Id.*)

## ANALYSIS

Under Section 3582(c)(1) and Fed. R. Crim P. 35, a court has power to modify a criminal sentence after it is pronounced in three ways. First, the Court can correct a sentence imposed based on an arithmetic or technical error, but only within 14 days of pronouncing the sentence. Fed. R. Crim P. 35(a). Second, if certain conditions are met, the Court can reduce a defendant's sentence based on substantial assistance to the Government. Fed. R. Crim. P. 35(b). Third, in extraordinary and compelling situations, the Court can reduce a defendant's sentence under the "compassionate release" provisions of 18 U.S.C. §3582(c)(1)(A)(i). Henley invokes only this third exception. (ECF No. 199.)

The Court's consideration of a compassionate release motion is a multi-step process. First, the Court must determine whether the defendant is eligible under the statute. To be eligible, a

defendant is required to show that he or she made a request for release to the prison warden and has either (a) exhausted all administrative appeals or (b) waited 30 days from the warden's receipt of the request, whichever is earlier. *See United States v. Sanford*, 986 F.3d 779, 781-82 (7th Cir. 2021). Second, if this "exhaustion" requirement is satisfied, the Court must then determine whether there are "extraordinary and compelling reasons" warranting a sentence reduction, consistent with the sentencing factors set forth in 18 U.S.C. §3553(a). *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Henley's request fails on both prongs of the analysis.

As an initial matter, Henley's compassionate release motion fails because he is not eligible for release under the statute. Henley has not attempted, let alone completed, any administrative appeal within the BOP. Indeed, having successfully avoided reporting to the BOP for nearly a year, there is no warden or other BOP personnel from whom Henley can, at this time, request compassionate release. Henley tries to turn this liability into an asset, insisting it should excuse him from exhaustion altogether. He contends that his failure to surrender renders exhaustion "impossible" and thus the Court should rule he need not satisfy the statute's exhaustion requirement. (ECF. No. 199 at 5.) He cites to a trio of district court decisions, *United States v. Scott*, 461 F. Supp. 3d 851, 857-59 (E.D. Wis. 2020); *United States v. Johnson*, No. 17-cr-162, 2020 WL 2770266 at *2 n.1 (E.D. Wis. May 28, 2020); and *United States v. Turner*, No. 18-cr-142, 2020 WL 5717096 at *4 (E.D. Wis. Sept. 24, 2020), in which the Court concluded that a defendant's failure to exhaust under §3582(c)(1)(A)(i) was not jurisdictional and could be excused based on judicially created equitable exceptions. All three of these decisions precede the Seventh Circuit's *Sanford* decision, which held that while the exhaustion requirement was not jurisdictional, it was a *mandatory* claim processing rule that must be enforced when properly invoked. 986 F.3d at 782. Here, the Government "respectfully opposes" Henley's motion based on Henley's acknowledgement that he "has never served any of the sentence" that was imposed. (ECF No. 201). While not burdened by great detail or precision, this statement is a sufficient objection to Henley's eligibility that the Court, under *Sanford*, must reject Henley's motion given his failure to exhaust with the BOP.

Indeed, there is good reason to require exhaustion in cases like this. While Henley lists a series of medical issues that he believes won't be adequately addressed if he is incarcerated, he has not given the BOP any chance to weigh in on its capacity to treat him. He instead asks the Court to assume the BOP would fail to treat him appropriately based on journal articles critical of

medical care in the prison system. (*See* ECF No. 199 at 8-11) (citing Emily A. Wang et al, *Cardiovascular Disease in Incarcerated Populations*, J. AM. COLL. CARDIOLOGY (2019); Alan Greenblatt, *America Has a Health-Care Crisis – in Prisons*, GOVERNING (July 29, 2019), https://www.governing.com/archive/gov-prison-health-care.html#:~:text=Prison%20is%20no%20place%20to; Emily H. Thomas et al, *Patients' Experiences Managing Cardiovascular Disease and Risk Factors in Prison*, HEALTH JUST. (2016); Andrew P. Wilper et al, *The Health and Health Care of US Prisoners: Results of a Nationwide Survey*, AM. J. PUB. HEALTH (2009); *Shortage of Correctional Staff in Federal Prisons is Dangerous*, INTERROGATING JUST. (Nov. 15, 2021), https://interrogatingjustice.org/latest-news/interrogating-justice/shortage-of-correctional-staff-in-federal-prisons-is-dangerous/; Camila DeChalus, *Federal Prison Working Conditions are Getting Worse Despite Biden's Promise to Improve Conditions, Staffers Say*, BUS. INSIDER (Mar. 18, 2022), https://www.businessinsider.com/prison-workers-joe-biden-pandemic-covid-worse-doj-2022-3; Walter Pavlo, *Bureau of Prisons is Overworking its Most Critical Staff Positions During First Step Act Implementation*, FORBES (Mar. 31, 2022), https://www.forbes.com/sites/walterpavlo/2022/03/31/bureau-of-prisons-is-overworking-its-most-critical-staff-positions-during-first-step-act-implementation/?sh=6bef315259e5; Sojourner Ahebee, *40% of Incarcerated People Have Chronic Conditions—How Good is the Healthcare They Get Behind Bars?*, PHILA. INQUIRER (Apr. 9, 2021), https://www.phillytrib.com/news/health/40-of-incarcerated-people-have-chronic-conditions-how-good-is-the-healthcare-they-get-behind/article_11f37765-a308-52f0-88db-4439ea29830a.html).) But the BOP is plainly in the best position to determine whether Henley's medical conditions are beyond the federal prison system's capacities. Without first raising these issues with the BOP, Henley invites to Court to substitute its judgment for that of the agency, ignoring that the BOP is responsible for making those decisions in the first instance. As the Government notes in its opposition, Henley may very well be able to serve his short sentence in a BOP medical facility. The Court cannot presume that the BOP's medical care is not up to Henley's needs.

Moreover, and in any event, even if the Court had the ability to dispense with exhaustion, it would not grant Henley's motion because he has not convinced the Court that his situation warrants compassionate release. Henley's extraordinary and compelling reasons are based on

medical conditions that, while not minor, are hardly rare.  According to the NIH and Cleveland Clinic, Henley's most serious medical condition, left ventricular hypertrophy, is present in 15-20% of the general population.  *Left Ventricular Hypertrophy*, CLEVELAND CLINIC (Sept. 20, 2021), https://my.clevelandclinic.org/health/diseases/21883-left-ventricular-hypertrophy.  While Henley's primary care doctor might prefer that Henley be allowed to serve a term of home confinement in lieu of being incarcerated, (ECF No. 199 at 2), that decision is not his to make.  Had Henley not committed criminal fraud by making false statements in an application to try to obtain $212,500 in funds to which he was not entitled, he would be free to order his medical affairs as he and his doctors see fit.  But that is not the situation he is in.  He has been convicted of a federal felony, and his freedoms are therefore reduced, consistent with his pronounced sentence.  In context, the reasons Henley proffers are not extraordinary and compelling within the meaning of the compassionate release statute.

Also, the Court believes that reducing Henley's sentence to eliminate any period of incarceration in favor of mere home confinement would be inconsistent with the purposes the Court attempted to achieve when it pronounced his sentence nearly a year ago.  Under 18 U.S.C. §3553(a), a sentence should "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."  Here, Henley has admitted participating in a serious fraudulent scheme aimed at taking advantage of our nation's generosity during the COVID-19 pandemic.  He did so for no reason other than greed.  He personally signed and submitted a fraudulent loan application requesting $212,500.  In the application, Henley represented that he had a company with 23 employees and an average monthly payroll of $85,000, knowing that this information was false.  He also lied to law enforcement agents when initially interviewed about the scheme.  While he ultimately did not receive any of the fraudulently requested funds, this is only because bank employees became suspicious and declined the loan.  This was serious misconduct.  The Court nevertheless imposed a lenient sentence of just six months incarceration, a punishment well below the guideline range, based on Henley's cooperation and remorse.  Giving him an even greater accommodation now would minimize the seriousness of his criminal conduct and undermine respect for the law.

Section 3553(a) also provides that a criminal sentence should "afford adequate deterrence to criminal conduct."  While the needs of deterrence may give way in the face of sufficiently serious medical conditions, the concerns Henley raises do not rise to this level.  Allowing a

defendant who commits the type of felony financial fraud present in this case to avoid any time of incarceration would undermine the deterrent effect of the sentence the Court pronounced.

Finally, the Court notes that it sentenced two of his co-defendants to similar six-month sentences. (20-cr-0196-bhl-3, ECF No. 113; 20-cr-0196-bhl-4, ECF No. 145.) A defendant in a related case likewise received a sentence of six-months incarceration. (20-cr-0197-bhl-1, ECF No. 36.) All three of these similarly situated defendants have already completed their periods of incarceration. Allowing Henley to avoid any period of incarceration would undermine the need to avoid disparate sentencing outcomes. It would also be unfair to those other defendants who have paid the proverbial price for their similar participations in this scheme.

In sum, Henley has admitted committing a serious financial fraud and consequently stands convicted of a federal felony. As a result of his criminal conduct, he needs to serve the sentence the Court imposed on him, and the sooner he does so, the better for himself and society. The Court understands his anxiety about being incarcerated with heart ailments. But these worries do not trump his obligation to serve his sentence. The Court hopes he will complete his sentence promptly and thereafter lead a pro-social life, avoiding any further interaction with the criminal justice system.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for compassionate release, (ECF No. 199), is **DENIED**.

Dated at Milwaukee, Wisconsin on August 16, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge